USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 2/25/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN COLEMAN,

                Plaintiff,

v.

CITY OF NEW YORK, et al.,

                Defendants.

No. 18-CV-11819 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Brian Coleman brings this action against Defendants the City of New York (the "City"); the New York City Police Department ("NYPD"); Officers Johanny Beissel and John and Jane Doe #1-10 (collectively, the "Police Officer Defendants"); Alexander Etseyotse—a security guard at Dollar Tree Store 4925—and Security Guards John and Jane Doe #1-10 (collectively, the "Security Guard Defendants"); and Dollar Tree Store 4925, Dollar Tree Stores, Inc., and Dollar Tree Store Management Inc. (together with the Security Guard Defendants, the "Dollar Tree Defendants"), for alleged violations of his constitutional rights arising out of a December 18, 2015 arrest. Before the Court is the Dollar Tree Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, the Dollar Tree Defendants' motion is granted.

## FACTUAL BACKGROUND

    The following facts, taken from Plaintiff's Amended Complaint, Dkt. 23, are assumed true for purposes of this motion to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). On December 18, 2015, Plaintiff entered Dollar Tree Store 4925 at 280 St. Nicholas Avenue in New York, NY. Am. Compl. ¶ 15. Plaintiff had been Christmas shopping

with his partner and granddaughters and was carrying shopping bags from other stores containing his purchases. *Id.* After picking out a number of items, Plaintiff and his family walked to the checkout line. *Id.* ¶ 16. He proceeded to leave his family in the checkout line while he walked back to the aisles to pick up wrapping paper. *Id.*

While shopping for wrapping paper, Plaintiff was approached by the Security Guard Defendants, including Defendant Etseyotse. *Id.* ¶ 17. The Security Guard Defendants accused Plaintiff of shoplifting, put their hands on him, and forced him to accompany them to a security office inside the store. *Id.* ¶ 18. They proceeded to detain Plaintiff in the security office while they called the police. *Id.* The Police Officer Defendants, including Defendant Beissel, then arrived at the store. *Id.* ¶ 19. After the Police Officer Defendants asked the Security Guard Defendants why they had called the police, they responded that Plaintiff had shoplifted. *Id.* The Police Officer Defendants searched Plaintiff but did not find any contraband or merchandise on him. *Id.* They asked Plaintiff what he had shoplifted. *Id.* Plaintiff replied that he had not shoplifted—he had merely left his partner and grandchildren in the checkout line while he returned to the aisles to find wrapping paper. *Id.* Police Officer Defendants asked if Plaintiff's family was still inside the store, and Plaintiff responded that they were. *Id.*

Plaintiff next alleges that the Police Officer Defendants and Security Guard Defendants spoke together and proceeded to escort Plaintiff's family members into the security office where Plaintiff was being held. *Id.* ¶ 20. The Security Guard Defendants took the shopping bags away from Plaintiff's family members. *Id.* ¶ 21. The shopping bags contained Plaintiff's purchases from the other stores he and his family had visited before Dollar Tree, including a store called Jimmy Jazz. *Id.* In particular, the bags contained clothing, sweat suits, Timberland boots, and sneakers. *Id.* When the Police Office Defendants asked the Security Guard Defendants what

2

had been stolen from Dollar Tree, the Security Guard Defendants did not name any specific merchandise. *Id.* The Security Guard Defendants proceeded to confiscate the shopping bags from other stores, including the bag labeled Jimmy Jazz. *Id.*

The Police Officer Defendants then asked the Security Guard Defendants to explain how Plaintiff had committed a theft in light of the fact that neither he nor his family had ever left Dollar Tree and his family was in the checkout line to pay for their items. *Id.* ¶ 22. After the Police Officer Defendants stated that it would be difficult to justify an arrest or bring Plaintiff before a judge, the Security Guard Defendants nonetheless repeated their accusation that Plaintiff had shoplifted and demanded that the Police Officer Defendants carry out the arrest. *Id.* The Police Officer Defendants instructed the Security Guard Defendants to show them the video surveillance of Plaintiff's activity in the store. *Id.* ¶ 23. After viewing the surveillance video, the Police Officer Defendants allegedly stated that the video evidence contradicted the Security Guard Defendants' allegations that Plaintiff had committed any wrongdoing. *Id.* The Security Guard Defendants again demanded an arrest. *Id.* At this juncture, Plaintiff witnessed a conversation between the Police Officer Defendants and Security Guard Defendants but could not hear the conversation in its entirety. *Id.* ¶ 24. Plaintiff alleges he heard the Dollar Tree Defendants stating that because they had called the police, they needed Plaintiff arrested. *Id.*

According to Plaintiff, the Defendants conspired to have Defendant Etseyotse make up allegations that he had personally observed Plaintiff bypass the cash registers and attempt to leave the store without paying for items from Dollar Tree. *Id.* ¶ 25. Plaintiff and his family insisted to the Police Officer Defendants and Security Guard Defendants that all of the confiscated merchandise still contained tags from other stores and they produced matching receipts, when the Security Guard Defendants confiscated the receipts. *Id.* ¶ 26.

3

Nonetheless, the Police Officer Defendants handcuffed Plaintiff with unnecessary tightness behind his back while his partner and grandchildren watched. *Id.* ¶ 27. According to Plaintiff, he felt humiliated. *Id.* The Security Guard Defendants instructed Plaintiff that they were placing him under a lifetime ban and that if he ever attempted to enter a Dollar Tree franchise in the future, he would be arrested by Dollar Tree employees on the spot and immediately sent to jail. *Id.* The Police Officer Defendants then escorted Plaintiff out of the Dollar Tree Store and into the back of a police car, leaving his family behind. *Id.* ¶ 28.

After reaching the police precinct, the Police Officer Defendants confiscated Plaintiff's money, phone, ID card, wallet, gold chain with medallion, and leather vest. *Id.* ¶ 29. Although they later returned his money, they kept his other items. *Id.* While at the precinct, Plaintiff was denied any food, drink, or phone calls. *Id.* ¶ 30. He spent hours with his hands handcuffed tightly behind his back and chained to a metal chair, causing him pain and suffering. *Id.* Plaintiff spent approximately 24 hours at the precinct before he was released upon arraignment. *Id.* He told the Police Officer Defendants that he was on medication, without which he would suffer physical pain. *Id.* ¶ 31. The police officers informed Plaintiff that medical treatment would cause delays in their processing of his arrest. *Id.* As a result of his lack of medical treatment, Plaintiff claims to have suffered nausea, vomiting, and additional pain and suffering. *Id.* Plaintiff had to appear in court multiple times before his charges were dismissed, causing him to experience mental distress. *Id.* ¶ 32. Plaintiff alleges he developed post-traumatic stress syndrome, anxiety, and depression as a result of the incident. *Id.* ¶ 33. He has seen a therapist, who has prescribed him medication to mitigate his extreme anxiety and depression. *Id.*

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint on December 17, 2018,[1] alleging the following causes of action: (1) false arrest and illegal imprisonment in violation of 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution; (2) municipal liability and negligent hiring, training, and supervision; (3) unlawful search and seizure, false arrest, imprisonment and deprivation of liberty, and destruction of property without probable cause in violation of the Fourth Amendment; (4) false arrest, imprisonment and deprivation of liberty without probable cause in violation of the Fourteenth Amendment; (5) excessive force in violation of the Due Process Clause; (6) malicious prosecution in violation of 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution; (7) unlawful conditions of confinement and deliberate indifference to medical needs in violation of the Due Process Clause; (8) denial of a fair trial in violation of the Sixth Amendment; (9) cruel and unusual punishment; and (10) unlawful conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985. Plaintiff brought his second cause of action only against the City of New York, his seventh cause of action only against the City of New York and the Police Officer Defendants, and his remaining causes of action against all Defendants, including the Dollar Tree Defendants. The Court interprets the Complaint to allege the first and sixth causes of action under both state and federal law, and all other causes of action under only federal law.

The Dollar Tree Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on May 30, 2019. Dkt. 18. On June 10, 2019, the Court granted Plaintiff leave to amend his complaint in response to the Dollar Tree Defendants' motion. Dkt.

---

[1] Due to electronic filing errors, Plaintiff re-filed his initial complaint on December 18, 2018, Dkt. 5, and again on January 2, 2019, Dkt. 6.

22. Plaintiff filed an Amended Complaint on June 14, 2019. Dkt. 23. Plaintiff's Amended Complaint raises the same causes of action as his initial complaint. The Dollar Tree Defendants again moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on June 24, 2019. Dkt. 24.

The City of New York and Police Officer Defendants answered the Amended Complaint on June 28, 2019, Dkt. 25, and do not join in the motion now before the Court.

## STANDARD OF REVIEW

A court reviewing a motion on the pleadings pursuant Federal Rule Civil Procedure 12(c) applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Hill v. Donoghue*, 518 F. App'x 50 (2d Cir. 2013) (quoting *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

The Dollar Tree Defendants argue that: (1) Plaintiff's § 1983, Fourth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment claims must be dismissed because the Dollar Tree Defendants are not state actors and did not operate under color of state law; (2) Plaintiff's state law claims are barred by the statute of limitations; and (3) Plaintiff's § 1985 claim must be dismissed for failure to allege racial or class-based discriminatory intent. The

Court addresses each of these arguments in turn.

### I. Plaintiff's § 1983 and Federal Constitutional Claims Fail Because Dollar Tree is Not a State Actor and Did Not Act Under Color of State Law

The Dollar Tree Defendants argue that Plaintiff has failed to allege that they are state actors or operated under color of state law. The Court agrees. "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also West v. Atkins*, 487 U.S. 42, 48-49 (1988). "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794, n. 7 (1966)). "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295, (2001)). A "conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324.

"Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983." *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (citations omitted), *aff'd*, 232 F. App'x 26 (2d Cir. 2007) (affirming that Plaintiff "failed to make the requisite showing of nexus between the actions of the [private] security guards and the State"). "Courts in this Circuit have repeatedly found . . . allegations insufficient to establish the requisite nexus to state action" where plaintiffs allege that private security guards, "after detaining plaintiffs on suspicion of shoplifting, called the police [and] provided a supporting

7

deposition containing allegations of shoplifting, and [the] plaintiffs were arrested." *Orellana v. Macy's Retail Holdings, Inc.*, No. 17-CV-5192 (NRB), 2018 WL 3368716, at *18 (S.D.N.Y. July 10, 2018).

The actions of private security guards have, however, been held to constitute state action in two circumstances: (1) where the guards are "given the authority of state law," or (2) where "they are willful participants in the joint activity of the State or its agents." *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004) (quoting *Josey v. Filene's, Inc.*, 187 F. Supp. 2d 9, 16 (D. Conn. 2002)); *see also Orellana*, 2018 WL 3368716, at *18 ("[S]ecurity guards have only been found to act under color of state law in limited circumstances, such as when a security guard was deputized as a 'special patrolman,' or where the store security guard and police officers acted in tandem.") (internal citations omitted). "When a security guard detains suspects for subsequent arrest by the police, joint activity with the state occurs when the police arrest the suspect solely based on the security guard's request, without making any independent investigation of the matter." *Harris v. Sec. Co. of 1370 Sixth Ave.*, No. 94-CV-2599 (JGK), 1996 WL 556927, at *3 (S.D.N.Y. Oct. 1, 1996). In other words, under this theory, "[j]oint activity exists where the police 'allow the security guard's judgment about whether probable cause exists to be substituted for their own.'" *Brooks v. Santiago*, No. 93-CV-206 (HB), 1998 WL 107110, at *2 (S.D.N.Y. Mar. 10, 1998) (quoting *Harris*, 1996 WL 556927, at *2).

Plaintiff fails to plausibly allege that the conduct of the Dollar Tree Defendants constituted state action under either theory. First, Plaintiff fails to allege facts establishing that the Dollar Tree Defendants were given the authority of state law. Plaintiff solely makes conclusory allegations that the Security Guard Defendants had the "authority to make arrests and

8

otherwise act as agents of law enforcement within the state and city of New York" and that the Dollar Tree Defendants "were acting in their official capacity as state actors under color of the laws . . . of New York State." Am. Compl. ¶¶ 10, 17. But Dollar Tree, a NASDAQ-traded chain of discount variety stores, is not a government entity, and Plaintiff's conclusory allegations are insufficient to adequately allege otherwise. Courts have found that private security guards are clothed with the authority of state law when they are sworn in as "Special Patrolmen" by the City and/or the State of New York. *See Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006) (denying motion to dismiss where plaintiff alleged that private security guard had been sworn in as a "special patrolman"), *rev'd*, No. 04-CV-9403 (PKC), 2009 WL 440434, at *10-12 (S.D.N.Y. Feb. 19, 2009) (granting defendant summary judgment after close of discovery because private security guard's "undisputed affiliation with the New York City sheriff's office did not impart upon him authority under the color of state law when he acted as a private . . . security guard"), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010); *Temple v. S.O. Albert*, 719 F.Supp. 265, 267 (S.D.N.Y. 1989) (holding private security guards acted under color of state law because they were "designated 'Special Patrolmen,' appointed by the New York City Police Commissioner pursuant to section 434a–7.0 of the New York City Administrative Code"); *Rojas v. Alexander's Department Store, Inc.*, 654 F.Supp. 856, 858 (E.D.N.Y.1986) (same). Plaintiff, however, has not alleged that the Security Guard Defendants were designated "Special Patrolmen" or had received any comparable designation. Plaintiff therefore fails to plausibly allege that the Dollar Tree Defendants were "given the authority of state law." *Guiducci*, 320 F. Supp. 2d at 37.

Plaintiff also fails to plausibly allege that the Dollar Tree Defendants were "willful participants in the joint activity of the State or its agents." *Guiducci*, 320 F. Supp. 2d at 37. The

overwhelming majority of courts in this Circuit have concluded that private security guards were not acting under the color of state law when they detained or questioned suspected shoplifters and called for police assistance. *See, e.g., Masri v. Cruz*, No. 17-CV-8356 (AT) (KHP), 2019 WL 2388222, at *3-4 (S.D.N.Y. June 6, 2019); *Orellana*, 2018 WL 3368716, at *17–19; *Michaels v. City of New York*, No. 10-CV-2666-SHS, 2011 WL 570125, at *4 (S.D.N.Y. Feb. 16, 2011); *Prowisor*, 426 F. Supp. 2d at 170, *aff'd*, 232 F. App'x 26; *Fletcher v. Walmart* Stores, Inc., No. 05-CV-1859 (WHP), 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006); *Guiducci*, 320 F. Supp. 2d at 37; *Josey*, 187 F. Supp. 2d at 16; *Harris*, 1996 WL 556927; *Moher v. Stop & Shop Cos.*, 580 F.Supp. 723, 725–26 (D.Conn.1984); *Newman v. Bloomingdale's*, 543 F.Supp. 1029, 1032 (S.D.N.Y.1982); *Iodice v. Gimbels, Inc.*, 416 F.Supp. 1054, 1055 (E.D.N.Y.1976). These cases stand for the proposition that, "[e]ven if the police subsequently arrest a shoplifter on the basis of a guard's statements, absent joint action by the guard and the police, or special patrolman status on the part of the guard, the guard's complaint to a police officer is no different than that of any other civilian witness to a crime." *Guiducci*, 320 F. Supp. 2d at 38. Moreover, the Second Circuit has held that where a "police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)

Indeed, Plaintiff has failed to identify a single case in which a court held that private security guards were acting under the color of state law. The Court, however, has identified one such case worthy of discussion, *Brooks v. Santiago*, 1998 WL 107110, at *2-4. In *Brooks*, Judge Baer found state action under the "willful participation" theory in a situation in which the police "failed to conduct an independent investigation to determine whether probable cause existed

10

prior to arresting" the plaintiff, but rather "took him into custody, simply on the word" of a private security guard and store managers. *Id.* at \*3. Although the police searched the plaintiff in *Brooks*, they did not find any stolen items on him. *Id.* at \*1, \*3. The private security guard told the police that he had no incriminating evidence against the plaintiff, but the store manager nonetheless allegedly declared that the plaintiff should be arrested because of problems the store had with "these guys." *Id.* at \*1, \*3. The police in *Brooks* also never questioned the plaintiff or interviewed any witnesses. *Id.* at \*3.

The facts here, while similar in some respects to *Brooks*, are distinguishable in others. In both cases, the police arrested the plaintiff even though their searches did not turn up any contraband or stolen merchandise. Am. Compl. ¶¶ 19, 21. Additionally, in both cases, the private security guards were unable to name any particular merchandise that had been stolen, yet nonetheless insisted on an arrest. *Id.* ¶ 21. However, the Police Officer Defendants in this action conducted a more thorough and independent search than the police did in *Brooks*. Unlike in *Brooks*, where the police told the plaintiff to "shut-up," the Police Officer Defendants in this case questioned Plaintiff prior to arresting him. *Id.* ¶ 19. The Police Officer Defendants were therefore able to evaluate the credibility of Plaintiff and the Dollar Tree Defendants' competing accounts of events before they made an arrest. The Police Officer Defendants also brought Plaintiff's family members back into the security office after Plaintiff explained that they were waiting in the checkout line.[2] *Id.* ¶¶ 19-20. In addition, rather than merely deferring to the account of the Security Guard Defendants, the Police Officer Defendants insisted on reviewing video surveillance footage themselves. *Id.* ¶¶ 22-23. Plaintiff has therefore failed to plausibly

---

[2] It is unclear from the Amended Complaint whether the Police Defendants and/or the Security Guard Defendants questioned Plaintiff's family members, or whether the family members were only brought to the security office so the Police Defendants and/or Security Guard Defendants could investigate the shopping bags they were carrying.

11

allege that the Police Officer Defendants "allow[ed] the security guard[s'] judgment about whether probable cause exists to be substituted for their own." *Brooks*, 1998 WL 107110, at *2 (citations omitted).

In sum, Plaintiff has failed to plausibly allege that the Security Guard Defendants were acting under color of state law. Accordingly, Plaintiff's first, third, fourth, fifth, sixth, eighth, and ninth causes of action alleging violations of § 1983 and the U.S. Constitution are dismissed against the Dollar Tree Defendants.

### II. Plaintiff's State Law Claims for False Arrest, Illegal Imprisonment, and Malicious Prosecution are Time Barred

Plaintiff also brings claims for false arrest, illegal imprisonment, and malicious prosecution under the New York State Constitution. Under New York law, "[c]auses of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations." *Bellissimo v. Mitchell*, 122 A.D.3d 560, 995 N.Y.S.2d 603, 605 (2d Dep't 2014) (internal citations omitted); N.Y. C.P.L.R. § 215(3). The same one-year statute of limitations applies to claims for malicious prosecution. N.Y. C.P.L.R. § 215(3); *see also Moshe Berlin v. Jetblue Airways Corp. et al.*, No. 18-CV-1545 (MKB), 2020 WL 502629, at *9 (E.D.N.Y. Jan. 30, 2020). Plaintiff was arrested on December 18, 2015 and was dismissed from confinement the following day. Am. Compl. ¶ 30 (stating that Plaintiff was held at the precinct for approximately 24 hours). Plaintiff filed this action nearly three years later, on December 17, 2018. Plaintiff's state law claims are therefore time-barred. Accordingly, Plaintiff's first and sixth causes of action alleging violations of the New York State Constitution are dismissed against the Dollar Tree Defendants.

### III. Plaintiff's Fails to Allege Sufficient Facts to State a § 1985 Claim for Conspiracy

Finally, the Dollar Tree Defendants argue that Plaintiff's 42 U.S.C. § 1985 claim for conspiracy to interfere with civil rights must be dismissed because Plaintiff fails to allege any racial or class-based discriminatory intent. The Court agaim agrees. The relevant portion of Section 1985 is subsection (3), which states, in relevant part, "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," the person injured may recover damages. "To state a conspiracy claim under 42 U.S.C. § 1985, [a plaintiff] must have alleged: (1) some racial or other class-based discriminatory animus underlying the [defendants'] actions; and (2) that the conspiracy was aimed at interfering with [the plaintiff's] protected rights." *Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010). "Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed." *Id.* (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (per curiam)).

Plaintiff fails to allege any facts establishing that the Defendants were motivated by racial animus or any other class-based animus. Indeed, the factual allegations section of Plaintiff's Amended Complaint never mentions his race or asserts that he is a member of any protected class.[3] It is therefore unclear from the four corners of the Amended Complaint what the basis is for Plaintiff's allegation that Defendants were conspiring to deprive him of the equal protection of the law. Moreover, the Amended Complaint is devoid of any allegation that the Defendants acted in a discriminatory manner by, for example, using racial or ethnic epithets. Plaintiff

---

[3] The only mention of race in the Amended Complaint falls within Plaintiff's fifth cause of action for excessive force, where he states that Defendants "exhibited signs of racial profiling and racial animosity." Am. Compl. at ¶ 54.

13

therefore fails to state a claim for conspiracy under 42 U.S.C. § 1985. *See, e.g., Shariff v. Poole*, 689 F. Supp. 2d 470, 478 (W.D.N.Y. 2010) (dismissing § 1985 claim for failure to allege that defendants acted with racial or related class-based discriminatory animus); *Wong v. Yoo*, 649 F. Supp. 2d 34, 71 (E.D.N.Y. 2009) (same). Accordingly, Plaintiff's tenth and eleventh causes of action are dismissed against the Dollar Tree Defendants.

## CONCLUSION

For the foregoing reasons, the Dollar Tree Defendants' motion for judgment on the pleadings is granted. The Clerk of Court is respectfully directed to terminate the motions at pending at Dkts. 18 and 24 and dismiss Defendants Dollar Tree Store 4925, Dollar Tree Stores, Inc., Dollar Tree Store Management Inc., Alexander Etseyotse, and Security Guards John and Jane Doe #1-10 from this action.

This Opinion and Order has no effect on Plaintiff's claims against the City of New York or the Police Officer Defendants, which remain pending.

SO ORDERED.

Dated: February 25, 2020
New York, New York

Ronnie Abrams
United States District Judge